UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| MATTHEW SANDOFSKY, an individual, on behalf of himself and others similarly situated, | ) ) ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 21-10052-FDS |
| v. | ) ) | |
| GOOGLE LLC, | ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO DISMISS**

**SAYLOR, C.J.**

This is a putative class action brought under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681. Plaintiff Matthew Sandofsky has brought suit against defendant Google LLC, alleging that Google failed to ensure that the "consumer reports" it generates are accurate and that it failed to remove information on its platform that may be harmful to the public. Sandofsky, who is an attorney, is proceeding *pro se*. He brings the action on behalf of himself and all similarly situated individuals—presumably, anyone as to whom Google has produced search results, and thus a "consumer report."[1]

Defendant has moved to dismiss the amended complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. For the reasons set forth below, the

---

[1] A class action cannot be brought by a *pro se* plaintiff, even one who is a licensed attorney. *See Kerlinsky v. Sandoz, Inc.*, 2010 WL 4450494, at *2 (D. Mass. Oct. 25, 2010); *see also* District of Massachusetts Local Rule 83.5.5(b) ("An individual appearing *pro se* may not represent any other party . . . .").

motion will be granted.

I. **Background**

   A. **Factual Background**

The complaint alleges that Google generates "consumer reports" in violation of the FCRA. Specifically, it alleges that Google provides a search engine that indexes internet content into a searchable database "which, upon a user's request, [is] produced in the form of a list of hyperlinks, accompanied by concise descriptions of the content contained within each, and ordered according to their importance to the individual user." (Am. Compl. ¶ 5). It further alleges that employers, landlords, and others use the Google search engine "to find data on individual consumers for the purpose of evaluating whether to transact business with them, employ them, or associate with them generally." (*Id.*). In addition, it contends that Google has a policy that "it will not remove content from [its] search results unless the author of such content has removed it from their website or it creates significant risks of identity theft, financial fraud, or other specific harms." (*Id.* ¶ 6 (internal quotation omitted)).

According to the complaint, Google "presently produces search results associated with [Sandofsky's] name upon request, without permission, and for a profit." (*Id.* ¶ 7). In particular, it contends that a link to "mylife.com" appears as a search result on Google, which is a website that allegedly contains records of a 2007 arrest related to Sandofsky. (*Id.*).

   B. **Procedural Background**

Sandofsky filed the initial complaint in this case on January 11, 2021. The complaint was then amended on January 26, 2021. It alleges a violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, and a state-law product-liability claim based on an alleged design defect.

On April 30, 2021, Google moved to dismiss the amended complaint for failure to state a

claim upon which relief can be granted.

## II. Standard of Review

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Médico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

## III. Analysis

### A. Documents Attached to Sandofsky's Opposition to the Motion to Dismiss

As a preliminary matter, Sandofsky requests that the Court take judicial notice of various exhibits to his opposition to the motion to dismiss pursuant to Fed. R. Evid. 201(c)(2).

At the motion to dismiss stage, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). The "narrow exceptions" to the rule include "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs'

3

claim," and "documents sufficiently referred to in the complaint." *Id.* None of the exhibits are expressly incorporated in the complaint and none fall within the excepted categories—their authenticity is disputed, they are not official public records, they are not referred to in the complaint, and they are not central to Sandofsky's claim.

Nonetheless, Sandofsky contends that the Court can take judicial notice of the exhibits pursuant to Fed. R. Evid. 201. That rule allows a court to take judicial notice of adjudicative facts, which are facts "not subject to reasonable dispute" either because they "[are] generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). But that is a rule of evidence, not a rule of pleading, and it does not trump the requirements of the rules of civil procedure.

Accordingly, the Court will not take judicial notice of any of the documents attached as exhibits to Sandofsky's opposition to the motion to dismiss.

### B. FCRA Claim

The Fair Credit Reporting Act ("FCRA") prohibits a consumer reporting agency from furnishing a consumer report for any purpose other than those permitted by statute. 15 U.S.C. § 1681b(a). The purpose of the FCRA is to "require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit" and other information "in a manner which is fair and equitable to the consumer." *Id.* § 1681(b). Prompted by congressional concern over abuses in the credit reporting industry, the FCRA safeguards the "confidentiality, accuracy, relevancy and proper utilization" of consumer credit information. *Id.*

The FCRA imposes responsibilities on three types of entities: (1) users of consumer reports, (2) consumer reporting agencies, and (3) furnishers of information. *See Gibbs v. SLM Corp.*, 336 F. Supp. 2d 1, 11 (D. Mass. 2004). Sandofsky contends that Google is a consumer

reporting agency. (Am. Compl. ¶ 9). A "consumer reporting agency" is defined by statute as, in part, "any person, which (1) for monetary fees, dues, or on a cooperative nonprofit basis, (2) regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers (3) for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f) (numbers added).

The complaint does not contain sufficient allegations of a FCRA violation to survive a motion to dismiss. Crucially, it contains no information providing a plausible basis that Google actually is a consumer reporting agency. Instead, it merely asserts, in conclusory terms, that "[i]n as much as [Google] returns search results on consumers not generally the subject of publicity, [Google] is a credit reporting agency under [the] FCRA." (Am. Compl. ¶ 9). It therefore does not plead sufficient "factual content" for the FCRA claim to be plausible on its face. *See Iqbal*, 556 U.S. at 678. Rather, it "merely recite[s] the language of the [FCRA] in an attempt to come within the confines of the FCRA, or stretch the statutory language beyond its intended purpose," and therefore must be dismissed. *In re Sony Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 1011 (S.D. Cal. 2014).

Among other things, the complaint does not contain information that Google regularly engages "in the practice of assembling or evaluating consumer credit information." 15 U.S.C. § 1681a(f). To "assembl[e] or evaluat[e]" involves "more than receipt and retransmission of information." *Smith v. Fist Nat'l Bank of Atlanta*, 837 F.2d 1575, 1579 (11th Cir. 1988) (quoting *D'Angelo v. Wilmington Med. Ctr., Inc.*, 515 F. Supp. 1250, 1253 (D. Del. 1981)); *see also Regus v. Citibank (S.D.), N.A.*, 2010 WL 2803952, at *6 (D.R.I. June 22, 2010). Thus, "a party who does no more than furnish information to a credit reporting agency is not liable under the [FCRA]." *Zeller v. Samia*, 758 F. Supp. 775, 782 (D. Mass. 1991); *see also Melendez v. Equifax*

*Credit Info. Servs.*, 1997 WL 392375, at *2 (D.P.R. July 3, 1997).

The complaint contends that Google uses a "web crawler to systematically browse" the internet, "index[es] its content in a searchable database," and returns hyperlinks to a user "ordered according to their importance." (Am. Compl. ¶ 5). It thus alleges only that Google receives and transmits information, not that it assembles or evaluates it. *See Carlton v. Choicepoint, Inc.*, 2009 WL 4127546, at *4 (D.N.J. Nov. 23, 2009) (dismissing a complaint against defendants who were "merely a conduit of information" and a "mere purveyor of unadulterated information"). Sandofsky contends that because the complaint alleges that Google presents information to a user in a specific order according to an algorithm, the complaint is sufficient to allege that Google is a "consumer reporting agency" within the meaning of the statute. But he has provided no caselaw to support the interpretation that the term "assembl[e] or evaluat[e]" encompasses entities that simply reorder information before retransmitting it in unadulterated form. *Lewis v. Ohio Pro. Elec. Network LLC*, 190 F. Supp. 2d 1049, 1057-58 (S.D. Ohio 2002) (finding that a defendant who not only reordered information, but in addition limited the access of third parties to certain information, "assembled" that information for FCRA purposes). In simple terms, Google provides a search engine that can produce search results; it is a conduit of information, not a compiler or evaluator.

In any event, the complaint does not sufficiently allege that Google provides the information "for the purpose of furnishing consumer reports to third parties." 15 U.S.C. § 1681a(f).[2] While it does not appear that the First Circuit has addressed the question, at least

---

[2] A "consumer report" is defined as "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility" for "credit or insurance to be used primarily for personal, family, or household purposes," "employment purposes," or any other enumerated purpose. 15 U.S.C. § 1681a(d)(1).

three other Courts of Appeals have concluded that the FCRA mandates that an entity must have the *specific intent* that the information it furnishes be a consumer report in order to qualify as a consumer reporting agency. *See Kidd v. Thompson Reuters Corp.*, 925 F.3d 99, 104-05 (2d Cir. 2019); *Zabriskie v. Fed. Nat'l Mortg. Ass'n*, 940 F.3d 1022, 1028 (9th Cir. 2019); *Tierney v. Advoc. Health & Hosps. Corp.*, 797 F.3d 449, 452-53 (7th Cir. 2015). Thus, an entity must "intend[] the information it furnishes to constitute a 'consumer report,'" which is something "used or expected to be used . . . for the purpose of serving as a factor in establishing the consumer's eligibility" for a specifically-enumerated purpose. *Kidd*, 925 F.3d at 104 (quoting in part 15 U.S.C § 1681a(d)(1)).

The complaint does not allege that Google produces search results with the intent to provide consumer reports. Simply alleging that "Google has become an extremely popular tool for employers, landlords[,] and others to find data on individual consumers for the purpose of evaluating whether to transact business with them, employ them, or associate with them generally" is insufficient to allege the requisite specific intent. (Am. Compl. ¶ 5); *see* Commentary on the Fair Credit Reporting Act, 55 Fed. Reg. 18,804, 18,805 (May 4, 1990) (noting that "a publisher of public information" does not become a consumer reporting agency simply "because of [the information it provides] possible use for consumer purposes by a few subscribers"). The complaint does not allege that Google *intends* for its search results to be used to "bear[] on a consumer's credit worthiness," and thus does not adequately state that Google is a consumer reporting agency that can be liable under the FCRA. 15 U.S.C. § 1681a(d)(1).

Finally, the complaint does not adequately allege that Google provides consumer credit information to a user for a fee. 15 U.S.C. § 1681a(f) (defining a consumer reporting agency as "any person which, *for monetary fees, dues, or on a cooperative nonprofit basis*" assembles or

evaluates consumer credit information") (emphasis added). An entity must not just make money, but rather must make money *in exchange* for providing consumer reports in order to be considered a "consumer reporting agency." *See Tierney*, 797 F.3d at 452. The complaint alleges that Google "is in the business of monetizing searches performed on its website" and "presently produces search results associated with Plaintiff's name upon request, without permission, and for a profit." (Am. Compl. ¶¶ 5, 7). A bare allegation that Google is a for-profit entity is not sufficient to satisfy that requirement. There is no allegation that the "employers, landlords[,] and others" who allegedly obtain consumer information from searches are charged a fee for obtaining that information. Simply making money—from advertisers or other sources—is not enough.

Accordingly, defendant's motion to dismiss the FCRA claim will be granted.

C. **Product Liability Claim**

Sandofsky also contends that Google's search engine is defectively designed and "unreasonably dangerous" because it "invites extortionists to promote their business by piggy backing on the search results it produces as its algorithm quickly learns to favor such content." (*Id.* ¶ 16). He contends that Google failed to "maintain[] appropriate procedures for the expedient review and deletion of materials on its platform that may cause harm to the public," and alleges that "Google is fully aware of millions of consumers affected by its behavior yet it refuses to adopt appropriate mitigation measures." (*Id.* ¶¶ 15-16).

"A plaintiff in a product liability case must demonstrate (1) the defendant produced or sold a defective product and (2) the product caused the plaintiff's injury." *Burnham v. Wyeth Lab'ys Inc.*, 348 F. Supp. 3d 109, 111-12 (D. Mass. 2018) (internal quotation omitted). Under Massachusetts law, "the economic loss doctrine provides that purely economic losses are not recoverable in negligence and strict liability actions in the absence of personal injury or damage to property other than the product itself." *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d. 70, 89

8

(D. Mass. 1998); *see also Rule v. Fort Dodge Animal Health, Inc.*, 604 F. Supp. 2d 288, 292-93 (D. Mass. 2009), *aff'd*, 607 F.3d 250 (1st Cir. 2010) (noting that the economic loss doctrine bars liability where a defective product does not damage other property or persons).

It is not entirely clear what Sandofsky contends is his injury as part of the product liability claim. (*See* Am. Compl. ¶ 20 ("Google's actions have harmed millions of consumers.")). However, it is clear that he has not alleged any personal physical harm or harm to any of his property. The complaint therefore does not state a claim for relief based on a product-liability theory and will be dismissed.

## IV. Conclusion

For the foregoing reasons, defendant's motion to dismiss for failure to state a claim upon which relief can be granted is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated: July 13, 2021